ABRAM SHAVER, Respondent, *v.* NELSON B. ELDRED, Appellant.

Prior to 1838 a dam was built across the outlet of Owasco lake, which was used for hydraulic purposes by the proprietors. In 1857 an act was passed (Chap. 527, Laws of 1857) appropriating the dam for the use of the Erie canal, subject however to the use for hydraulic purposes by the owners of such dam at the time of such appropriation. The canal commissioners were authorized to increase the height of the dam, and to appropriate for the purpose the necessary lands, water rights, etc. In pursuance of a resolution of the canal board, flush gates were put upon the dam by the commissioner in charge, raising the water in the lake. In 1873 plaintiff presented a claim against the state for permanent damages to his adjoining lands, and an award was made to him therefor. Under an act of 1874 (Chap. 399, Laws of 1874), the dam was rebuilt of the same height as the old one, with flush gates two feet in height taken from the old dam and built into the new. In 1881 defendant, who was a director and the

superintendent of a corporation, one of the proprietors of the dam at the time of its appropriation in 1857, acting under an authority in writing of the assistant superintendent of public works, given to him two years before, opened the gates of the dam and the water overflowed said lands of the plaintiff. Said assistant reported promptly to the superintendent the authority so given, and he had allowed it to remain in force. In an action to recover damages, *held*, that, assuming that the commissioners did not proceed in all things as required by statute, yet the legislature, in subsequently making appropriations and passing laws upon the subject, must be deemed to have acted with reference to what had been done by the canal authorities, and to have adopted and ratified their acts; and that, therefore, at the time in question, the state had the right to use the flush gates, and the remedy, if any, of any person whose property was injured by such act was by claim for compensation from the state; that the appointment of defendant to take charge of the gates must be deemed to have been ratified by the superintendent; also that defendant was not ineligible under the provision of the Revised Statutes (1 R. S. 250, § 185), which declares that no person owning any hydraulic works "dependent on the canals for their supply, or employed in or connected with such works, shall be employed as an agent upon the canals," as the said corporation was not dependent upon the canals, its right to the use of the water having been reserved by the act of 1857 (*supra*); that the subsequent action of the state must be presumed to have been subject to the original rights reserved; and that, therefore, the action was not maintainable.

(Argued April 18, 1889; decided May 3, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of January, 1886, which affirmed a judgment of the County Court of Cayuga county, in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought to recover for injuries to plaintiff's crops, caused, as he alleged, by the act of the defendant in raising a dam on the outlet of Owasco lake and thereby flooding his premises.

The county judge found that, on the 18th of March, 1881, the defendant was a director and the superintendent of a corporation known as the Auburn Water Works Company, and that on that day he applied to one of the assistant superin-

tendents of public works for authority to close the gates of a
dam across the outlet of Owasco lake when the water should
lower sufficiently; that on the twenty-fifth of the same month
said assistant superintendent consented, in writing, that the
defendant should do so, and also, if it should become neces-
sary, to temporarily open the gates; that the defendant, by
closing said gates and keeping them closed during the spring
and summer of 1883, caused the water of the lake to overflow
certain lands in the possession of the plaintiff, whereby the
crops and grass growing thereon were injured to the extent
of $150. The trial judge also found, as a conclusion of law,
that the assistant superintendent had no authority to delegate
discretionary power to the defendant or to appoint him as his
agent to do said acts; that the same were done without lawful
right or authority, and that the defendant was liable for all
the injuries caused to the plaintiff thereby.

*Charles M. Baker* for appellant. If the Auburn Water-
Works Company was not dependent upon the canals for its
supply of water, the appointment or employment of defend-
ant was valid. (*Wright* v. *Eldred*, 46 Hun, 12.) Even if it
had been dependent upon the canals for a supply of water,
and defendant being an officer of that company, ineligible for
appointment to his position, still he was an employe or agent
of the state, *de facto*, to do what he did with the flush gates,
and as such agent or employe was entitled to protection even
if his appointment or employment was invalid. (*Dolan* v.
*Mayer*, 68 N. Y. 278; *Morrison* v. *Sayre*, 40 Hun, 467;
*Wilcox* v. *Smith*, 5 Wend. 231; *Wood* v. *Peake*, 8 Johns. 69;
*Newcomb* v. *Fellows*, 4 Denio, 437; *Waggoner* v. *Jermaine*,
7 Hill, 357.) Whether the appointment of defendant was
valid or not, his acts were performed at the request of the
canal officer who had the especial charge of the middle divi-
sion of the canals, and they were performed in connection
with the use and management of the canals. The state
assumes liability for all damages arising from such acts.
(*Sipple* v. *State*, 99 N. Y. 284; Laws 1870, chap. 321, § 1;

Laws 1883, chap. 205, § 13; *Calkins* v. *Baldwin*, 4 Wend. 667; *Russell* v. *Mayor, etc.*, 2 Denio, 465; *Stevens* v. *Middlesex Canal*, 12 Mass. 465.) The criterion as to whether the defendant or the state is liable is not whether too much discretion was given to the defendant, but whether the state retained authority over him and could control his acts and direct him in their exercise, and could revoke his appointment and remove him. (*Brackett* v. *Lubke*, 4 Allen, 138; *Sadler* v. *Henlock*, 4 E. & B. 571; *Sproul* v. *Hemmingway*, 14 Pick. 1; *Sipple* v. *State*, 99 N. Y. 284.) The acts of the canal officers constituted an appropriation of the right to store water for canal purposes in Owasco lake by means of flush gates. Payment of compensation was not a condition precedent to acquiring that right, and was not necessary to constitute their acts an appropriation. (*Birdsall* v. *Cary*, 66 How. Pr. 358; *Turrill* v. *Norman*, 19 Barb. 263; *Ten Broeck* v. *Sherrill*, 71 N. Y. 279; Laws 1883, chap. 205, § 13.) An award where future damages may be demanded is supposed to cover and include all damages which might have been claimed. (*Furniss* v. *H. R. R. R. Co.*, 5 Sandf. 551.) An award of nothing has the same effect as an award and payment of a specified sum, and is compensation within the meaning of the Constitution and statutes. (*Rexford* v. *Knight*, 15 Barb. 627; *People* v. *Mayor of Brooklyn*, 4 N. Y. 419, 436; *Heacock* v. *State*, 105 id. 246.) The decision of any tribunal having jurisdiction to pass upon the questions submitted to it is as conclusive as the judgment of a court. (*Demorest* v. *Dargh*, 32 N. Y. 281; *Morewood* v. *Corp. of New York*, 6 How. Pr. 386; *Van Wormer* v. *Mayor of Albany*, 15 Wend. 262; *People ex rel. Peck* v. *Canal Board*, 29 Hun, 159.) If defendant was only an officer *de facto*, having no authority to open or keep open the flush gates, he cannot be held liable for an omission to act. (*Bentley* v. *Phelps*, 27 Barb. 524; *Olmstead* v. *Dennis*, 77 N. Y. 378.)

*H. V. Howland* for respondent. The assistant superintendent of public works had no pretense of authority to appoint

any agent in regard to canal services. (Const. art. 5, § 3 ; *Lyman* v. *Jerome*, 29 Wend. 485 ; *St. Peter* v. *Dennison*, 58 N. Y. 416 ; 2 Kent's Com. 633, note *b ;* Story on Agency, § 12.) Neither the superintendent of public works, nor any of his assistants or agents, had authority to place or keep the flush boards on this dam and thereby injure the property of the plaintiff. (*St. Peter* v. *Dennison*, 58 N. Y. 421 ; *Smith* v. *City of Rochester*, 92 id. 473 ; 1 R. S. 219, 220, §§ 9, 28 ; *Jackson* v. *Daly*, 5 Wend. 526 ; 2 R. S. [2d ed.] 458, § 27 ; *Green* v. *Miller*, 6 Johns. 39 ; *Parrot* v. *Knick. Ins. Co.*, 38 How. Pr. 508 ; 4 Mass. 522 ; 2 R. S. 555, § 27 ; *People ex rel. Mygatt* v. *Bd. of Suprs.*, 11 N. Y. 563 ; *Stewart* v. *Wallis*, 30 Barb. 344 ; *Hacker* v. *Worden*, 22 id. 400 ; *Varick* v. *Smith*, 5 Paige, 138.)

VANN, J. The defendant admits that he closed the gates of the dam upon the outlet of Owasco lake, but claims that, in so doing, he acted under the authority of the state, and that many years ago the state acquired the right to maintain the dam and to regulate the flow of water from the lake thereby. The rights of the state and the authority of the defendant to act for it are, therefore, the important questions presented by this appeal.

In addition to the facts found by the learned county judge, it appears that, prior to the year 1838, a dam was built across the outlet and that it was used for hydraulic purposes by the proprietors, who placed flush boards on the crest thereof to obstruct the flow of water from the lake. Since 1851 eleven different statutes have been passed by the legislature in relation to the improvement of said outlet, appropriating the dam, raising the height thereof, constructing a bulk-head for the purpose of storing water in the lake, and rebuilding and repairing the dam. (Laws of 1852, chap. 193, p. 264 ; Id. chap. 309, p. 454 ; Laws of 1853, chap. 175, p. 311 ; Laws of 1854, chap. 397, p. 1010 ; Laws of 1855, chap. 539, p. 1019 ; Laws of 1857, chap. 524, p. 107 ; Laws of 1858, chap, 328, p. 547 ; Laws of 1871, chap. 930, p. 2137 ; Id. chap. 778, p. 1787 ;

Laws of 1872, chap. 583, p. 1424; Laws of 1874, chap. 399, p. 514.)

Action was taken by the state authorities for the purpose of accomplishing the objects specified in these statutes, but such action does not appear to have always been taken in the manner provided by law. What was done, however, seems to have been ratified by subsequent legislation appropriating various sums to complete the different improvements. The object of the earlier statutes was to increase the supply of water for power to be used at the Auburn state prison. The first act connecting Owasco lake with the Erie canal was passed in 1857 (chap. 524, p. 107), when the canal commissioners were authorized to appropriate this dam to the state "with right to increase the height of said dam, or otherwise raise the water above the same, to such height as" the canal commissioners should establish, "and the right to draw water therefrom under such regulations as may from time to time be established" by said commissioners; "and also to appropriate, for the purpose aforesaid, such lands, water, water rights and privileges as the said commissioners may deem necessary to effectuate and complete said improvement." The canal appraisers were authorized and required to award to the persons whose property was taken, "and also to the owner or owners of any lands which may be injured by raising the water in such lake or outlet by reason of such dam, such sum or sums as they" should deem them equitably entitled to receive as compensation. The act also contained an appropriation for the payment of the awards. The next year an appropriation was made for the improvement of Owasco lake outlet to cover deficiency. (Laws of 1858, chap. 328, p. 547.) In June, 1868, the canal board adopted and approved a recommendation made by the division engineer of the Erie canal "to raise the water one and a half feet above the crest of the dam, by means of placing flush boards thereon."

In 1871, the canal commissioner in charge of the middle division, to which Owasco lake and its outlet belonged,

reported to the legislature that the supply of water from said lake to the Port Byron level of the Erie canal was liable to fail during low water, but that more water could be obtained by raising said dam and converting the lake into a reservoir. He also reported that he had ordered a survey and estimate to be made in order to raise the water in the lake two and one-half feet higher. · The legislature, thereupon, made an appropriation " for the construction of a bulk-head or other adequate structure in or upon the outlet of the Owasco lake for the purpose of storing water in the Owasco lake for canal purposes, said sum    *    *    *    to be expended by and under the direction of the canal commissioner in charge of the middle division of the Erie canal."    (Laws of 1871, chap. 930, p. 2137.)

In 1872 a further appropriation was made for the purpose of improving the feeder at and above the dam now used by the Auburn Water-Works Company.    (Laws of 1872, chap, 583, p. 1424.)    At about this time flush gates were put upon the dam by the commissioner in charge, and, in 1873, the plaintiff presented a claim to the canal appraisers for damages from the overflow of water upon the identical land involved in this action.    He stated in his petition that, in April, 1872, the canal commissioner, by the use of flush boards, raised the water of the lake about four or five feet above its natural level, and that as the structure and overflow were to be permanent, his damages amounted to the sum of $4,000.    The claim was heard and an award made.

By chapter 399, Laws of 1874, a certain sum was appropriated " to pay for work done and now due in repairing stone dam at Owasco lake in the summer of 1873," and a further sum " for rebuilding the upper dam on the Owasco outlet,    *    *    *    to be expended under the direction of the commissioner in charge of the middle division."    A map, plan and estimate for rebuilding the dam, after approval by the state engineer, was adopted by the canal board, and the dam was rebuilt accordingly.    The plan provided for flush gates two feet in height; and in executing the plan the new dam was built of the same height as the old one, and the flush gates were taken

from the old dam and built into the new one. These gates are still in use and were the cause of the overflow by which the plaintiff's crops were injured.

Assuming that the commissioners did not, at all times, proceed in all things as required by the Revised Statutes (1 R. S. 221, § 17), the legislature, in subsequently making appropriations and passing laws upon the subject, is deemed to have acted with reference to what had been done by the canal authorities. (*Brown* v. *Mayor, etc.*, 63 N. Y. 239, 244, 245; *Nelson* v. *Mayor, etc.*, Id. 535, 546.) Under the circumstances of this case the legislature is presumed to have had knowledge of the facts directly involved in its acts, and to have adopted what had been done, by visible and permanent structures, towards appropriating the waters of Owasco lake. When it made an appropriation for rebuilding the old dam, and directed that the amount should be expended by the commissioner in charge, it sanctioned the construction of a new dam at the same height as the old one, even if the canal officers had raised the latter to a height not strictly authorized, owing to their failure to comply with certain preliminaries required by statute.

We think, therefore, that, at the time of the alleged trespass, the state had the right to use the flush gates in question, and that the remedy of individuals, whose property was injured by such use, was to seek compensation from the state in the usual way. (*Wright* v. *Eldred*, 46 Hun, 12.)

It is, however, contended that the defendant had no authority to act for the state, because an assistant superintendent of public works could not appoint an agent with discretionary power to raise and lower the flush gates when he saw fit. The appointment was promptly reported by the assistant to the superintendent of public works, who had allowed it to remain in force for two years, at the time of the acts in question. It, therefore, must be regarded as the appointment of the superintendent himself, as a ratification of the act of his assistant may be presumed from the circumstances. But it is claimed that the defendant, owing to his connection with the Auburn Water-Works Company, was ineligible under the Revised

Statutes, which provide that no person owning any hydraulic works dependent upon the canals for their supply, or who shall be employed in or connected with any such works, shall be employed as superintendent, lock-keeper, collector of tolls, weighmaster, or other agent upon the canals. (1 R. S. 777, § 185 [8th ed.].) The application of the statute to this case is questioned upon the ground that the rights of the state are, by its own enactment in appropriating the waters of the lake, subject to those of the owners of the dam, including the Auburn Water-Works Company. (Laws of 1857, chap. 524, p. 107.) By this act the canal commissioners were authorized to appropriate, among other things, the dam in question, but the right was made expressly "subject * * * to the use for hydraulic purposes, by the owners of such dam, at the time of such appropriation, their heirs and assigns, of the water of said outlet, as the same shall, from time to time be drawn from said dam." The learned General Term apparently overlooked said statute in deciding this case, but subsequently, in deciding another action brought against the same defendant to recover for injuries caused by lowering the flush gates upon said dam, the statute was recognized and due effect given to it by a judgment in his favor, ( *Wright* v. *Eldred*, *supra*.)

The water-works company was not dependent upon the canal for its supply of water, because the state appropriated the dam subject to the right of the company to use the water for hydraulic purposes. (Laws 1857, chap. 524, § 1.) Appropriation, subject to an existing right, leaves that right unaffected by the exercise of the power of eminent domain. As the water right of the company was not acquired by the state, it did not become a part of the canal. The company, therefore, was not dependent upon the canal for its supply of water, but was independent of it. The action of the state in increasing the storage capacity of the dam, after its first act of appropriation in 1857, is presumed to have been in harmony with it, and, therefore, subject to the original water right of the company, because the new dam was not to be built until the "owners of water-powers below" had con-

1889.]    PEOPLE ex rel. NUGENT v. POLICE COMRS.    **245**

Statement of case.

tributed $3;000 towards the project.    (Laws 1874, chap. 399, p. 514.)

The conclusion of law of the trial judge, which was duly excepted to, · was, therefore, erroneous and the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.

Judgment reversed.